

# IN THE
# TENTH COURT OF APPEALS

## No. 10-20-00301-CV

## IN THE INTEREST OF C.L.R., A CHILD

### From the 361st District Court
### Brazos County, Texas
### Trial Court No. 19-003255-CV-361

## MEMORANDUM OPINION

After a bench trial, the parental rights of appellants, Olivia and Charles, were terminated as to their child, C.L.R. III.[1] Both Olivia and the Charles have appealed. In three issues, Olivia challenges the sufficiency of the evidence to support two predicate findings and the best-interest finding. In four issues, Charles alleges that the evidence is insufficient to support four predicate findings. We affirm.

---

[1] To protect the identity of the child, who is the subject of this suit, we hereinafter refer to appellants by the pseudonyms "Olivia" and "Charles." *See* TEX. FAM. CODE ANN. § 109.002(d); *see also* TEX. R. APP. P. 9.8(b).

# I.  STANDARD OF REVIEW

The standards of review for legal and factual sufficiency in cases involving the termination of parental rights are well established and will not be repeated here. *See In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002); *see also In re J.O.A.*, 283 S.W.3d 336, 344-45 (Tex. 2009).  If multiple predicate violations are found by the factfinder, we will affirm based on any one finding because only one finding is necessary for termination of parental rights.  *See In re J.S.S.*, 594 S.W.3d 493, 503 (Tex. App.—Waco 2019, pet. denied). Moreover, we give due deference to the factfinder's findings and must not substitute our judgment for that of the factfinder.  *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).  The factfinder is the sole judge "of the credibility of the witnesses and the weight to give their testimony." *Jordan v. Dossey*, 325 S.W.3d 700, 713 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

# II.  OLIVIA'S APPEAL

Olivia alleges that the evidence is insufficient to support the predicate findings that she:  (1) knowingly placed or allowed the child in dangerous conditions or surroundings under Texas Family Code section 161.001(b)(1)(D); and (2) engaged in an endangering course of conduct or knowingly placed the child with someone else who engaged in an endangering course of conduct under Texas Family Code section 161.001(b)(1)(E). Olivia also contends that the evidence is factually insufficient to support the best-interest finding.

## A.    Preliminary Matter

In the instant case, Olivia's parental rights were terminated under subsections 161.001(b)(1)(D), (b)(1)(E), and (b)(1)(O).  She does not challenge the sufficiency of the evidence supporting the predicate ground under subsection (b)(1)(O).  Ordinarily, the failure to challenge this ground would be enough to affirm the trial court's termination order.  *See In re J.S.S.*, 594 S.W.3d at 503.  However, the Texas Supreme Court requires a review of the subsection (b)(1)(D) or (b)(1)(E) findings.  *See In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019).  Accordingly, we address Olivia's complaint under subsection (b)(1)(D).[2]

## B.    Subsection (b)(1)(D)

Termination under subsection (b)(1)(D) requires clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child."  TEX. FAM. CODE ANN. § 161.001(b)(1)(D).  Subsection (b)(1)(D) requires proof of endangerment, which means to expose to loss or injury, to jeopardize.  *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).  While "endanger" means "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury."  *Id.; see In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston

---

[2] Because we conclude that the evidence is sufficient to support the trial court's finding under subsection (b)(1)(D), we need not address the subsection (b)(1)(E) finding.  *See* TEX. R. APP. P. 47.1., 47.4; *see also In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019).

[14th Dist.] 2005, no pet.) (noting that it is not necessary that the parent's conduct be directed towards the child or that the child actually be injured; rather, a child is endangered when the environment creates a potential for danger which the parent is aware of but disregards). The danger to a child may be inferred from parental misconduct. *Boyd*, 727 S.W.2d at 533. Furthermore, in considering whether to terminate parental rights, the court may look at parental conduct both before and after the birth of the child. *Avery v. State*, 963 S.W.2d 550, 553 (Tex. App.—Houston [1st Dist.] 1997, no pet.). Subsection (b)(1)(D) permits termination based upon only a single act or omission. *Jordan*, 325 S.W.3d at 721 (citing *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied)).

The trial court's finding under subsection (b)(1)(D) with regard to Olivia is adequately supported by the evidence in the record. Evan Stroup, a caseworker for the Texas Department of Family and Protective Services (the "Department"), testified that the child was removed from Olivia's care while the child was still in the hospital due to safety concerns regarding a recent "drug bust" involving Olivia and Charles in which a substantial amount of narcotics, crack-cocaine-making materials, and large sums of money were retrieved during the incident. The "drug bust" apparently occurred at the residence where the Olivia and Charles intended to return, and the incident resulted in Olivia and Charles both being arrested for drug-related charges, which were still pending

at the time of trial.[3] *See In re S.M.*, 389 S.W.3d 483, 492 (Tex. App.—El Paso 2012, no pet.) (stating that evidence of criminal conduct, convictions, and imprisonment and its effect on a parent's life and ability to parent may establish endangerment); *see also In re V.V.*, 349 S.W.3d 548, 554 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (op. on reh'g en banc) ("Intentional criminal activity that exposes a parent to incarceration is conduct that endangers the physical and emotional well-being of a child."); *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied) (stating that a history of illegal drug use and drug-related criminal activity is conduct that subjects a child to a life that is uncertain and unstable, thus endangering his physical and emotional well-being).

Additionally, on June 24, 2020, Olivia removed the child from her aunt's care against court orders and sat with him inside Charles's vehicle shortly after midnight, despite the fact that Charles was smoking marihuana. *See In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.) (noting that illegal narcotics use supports a finding that a child's surroundings endanger his physical and emotional well-being). When approached by law enforcement because of the smell emanating from the vehicle, Charles

---

[3] Though the record contains evidence of negative drug tests from Olivia during the pendency of this case, her alleged involvement in the "drug bust," as well as her continued association with Charles, who has an extensive criminal history involving drug offenses, serves to support the trial court's endangerment finding. *See In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied) (stating that conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being); *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.); *see also In re J.E.*, No. 07-12-00449-CV, 2013 Tex. App. LEXIS 1063, at *11 (Tex. App.—Amarillo Feb. 5, 2013, no pet.) (mem. op.) (determining that Mother's association with drug users and her "pattern of drug use" was sufficient to demonstrate endangerment).

drove away at what was observed to be a high rate of speed with the headlights turned off while the child was sitting in Olivia's lap unrestrained. After Charles was apprehended, Olivia refused to speak with officers about what had transpired, which was characterized at trial as indicating support for Charles's actions.[4] Later in her testimony, Olivia admitted that if she had complied with court orders and not removed the child from her aunt's care, the child would not have been in the car during this incident. Stroup and the officer on the scene, Officer Kyle Lukach of the Bryan Police Department, testified that Olivia did not behave in a manner that was conducive to the child's safety.

In addition to the foregoing, Stroup recounted another incident two days later, on June 26, 2020, whereby Olivia and Charles were watching movies in bed at almost five in the morning, and Charles accused Olivia of infidelity and assaulted her. Charles allegedly "ripped her clothes off, hit her with the belt, and pulled her hair . . . forcibly shoving her outside, or forcefully making her leave the apartment." Olivia sustained a large bump on her forehead, bald spots where her hair should have been, a bruised left arm, and a scratch on her chin. When discussing the incident with Stroup, Olivia minimized the violence and referred to it as a misunderstanding. Stroup noted that Olivia's minimization of the assault was another instance of Olivia failing to take protective action for the child. *See In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston

---

[4] Officers also found a small baggie of marihuana in the pocket of the driver's side door.

[14th Dist.] 2003, no pet.) ("Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment.").

Stroup later suggested that Olivia and Charles have continued their relationship even though Charles had been arrested at least five times during the course of this case, including for endangering the child and assaulting Olivia. Indeed, at the time of trial, Charles apparently had nineteen pending criminal charges. Stroup also recounted how Olivia was unsuccessfully discharged from counseling, never provided pay stubs to verify employment, failed to maintain regular contact with the Department after March 2020, and failed to complete her family service plan. *See In re R.F.*, 115 S.W.3d 804, 811 (Tex. App.—Dallas 2003, no pet.) (considering, as a part of the endangering-conduct analysis, a parent's failure to complete a service plan).

Based on the foregoing evidence, we conclude the evidence was sufficiently clear and convincing to support the trial court's finding under subsection (b)(1)(D). Looking at the evidence in the light most favorable to the finding of the trial court, we conclude that a reasonable factfinder could have formed a firm conviction that Olivia knowingly placed or allowed her child to remain in conditions or surroundings that endangered his physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D); *see also In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266. Moreover, the disputed evidence on the matter is not so significant that the factfinder could not have formed a firm conviction or belief that its finding was true. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D);

*see also In re J.O.A.*, 283 S.W.3d at 345; *In re J.F.C.*, 96 S.W.3d at 266-67. Accordingly, we overrule Olivia's first two issues on appeal.

## C.   The Trial Court's Best-Interest Finding

In her third issue, Olivia challenges the trial court's best-interest finding. When deciding the best-interest issue, we consider the well-established *Holley* factors, which include the child's wishes, the child's emotional and physical needs now and in the future, emotional or physical danger to the child now and in the future, the parenting abilities of the parties seeking custody, programs available to help those parties, plans for the child by the parties seeking custody, the stability of the proposed placement, the parent's conduct indicating that the parent-child relationship is improper, and any excuses for the parent's conduct. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see also In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012). The Department need not prove all the *Holley* factors as a "condition precedent" to termination, and the absence of evidence of some factors does not bar the factfinder from finding by clear and convincing evidence that termination of parental rights is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27; *see Spurck v. Tex. Dep't of Family & Protective Servs.*, 396 S.W.3d 205, 222 (Tex. App.—Austin 2013, no pet.).

In the instant case, the child, who was less than a year old at the time of trial, is too young to express his desires. However, the child has been placed with his maternal grandmother since birth, and this placement is safe and stable. *See In re L.G.R.*, 498 S.W.3d

195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (noting that when a child is too young to express his or her desires, the court may consider the quality and extent of his or her relationships with prospective placements, and evidence that a child is well cared for and is bonded with the foster family and has spent minimal time in the presence of his or her parents). Stroup emphasized that placement with the maternal grandmother is the best option for long-term stability, especially considering Olivia and Charles's "longstanding and very turbulent relationship" that "together and individual[ly] pose a great threat to this child's safety and well-being." The maternal grandmother wishes to adopt the child. *See In re S.H.A.*, 728 S.W.2d 73, 92 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (en banc) (noting that the need for permanence is a paramount consideration for a child's present and future physical and emotional needs).

The evidence also demonstrates Olivia's violation of court orders that resulted in the child being exposed to Charles's marihuana use, as well as Charles's misguided decision to evade police in a vehicle while the child was unrestrained in Olivia's lap. Moreover, despite this endangering incident, Olivia continued to associate with Charles, which resulted in her violent assault two days later. Olivia subsequently refused to speak with police about the evading incident, and she also minimized Charles's assault.

Furthermore, contrary to Olivia's and Charles's testimony that their relationship ended before the child was born, the record reflected that Olivia and Charles continued to associate with one another during the pendency of this case, despite Charles's violent

acts toward Olivia, Charles's continued association with drugs, and Charles's nineteen pending criminal charges. *See Williams v. Williams*, 150 S.W.3d 436, 451 (Tex. App.—Austin 2004, pet. denied) (stating that evidence of past misconduct or neglect can be used to measure a parent's future conduct); *Ryan v. Burns*, 832 S.W.2d 431, 435 (Tex. App.—Waco 1992, no writ) ("Past is prologue."); *see also In re A.M.*, 385 S.W.3d 74, 82-83 (Tex. App.—Waco 2012, pet. denied) (concluding that evidence of Mother's history of neglecting and endangering children by exposing them to domestic violence supported the trial court's finding that termination was in the child's best interest). Furthermore, the testimony established that Olivia has a pending drug charge, which is the result of the "drug bust" that necessitated the removal of the child.

The record does not show that Olivia has maintained stable housing or employment throughout this case. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.) ("Evidence of a parent's unstable lifestyle can also support as factfinder's conclusion that termination is in the child's best interest."). Nor has Olivia completed her court-ordered service plan. *See Wilson v. State*, 116 S.W.3d 923, 925 (Tex. App.—Dallas 2003, no pet.) (noting that a parent's poor parenting skills and lack of motivation to "learn how to improve those skills" supports finding that termination is in the child's best interest). Rather, Olivia discontinued communication with the Department in March 2020. Stroup also testified that the child has medical needs that require genetic testing and that Olivia has not demonstrated an ability to meet those

needs. Olivia also failed to describe any plans for the child in her testimony. Instead, she asserted that she had not done "anything wrong or bad, you know, to harm my son."

Based on our review of the record, we find that the above-mentioned evidence touches on several of the *Holley* factors and that those factors weigh in favor of the trial court's order of termination. *See* 544 S.W.2d at 371-72. We therefore conclude that the evidence presented is legally and factually sufficient for a factfinder to reasonably form a firm belief or conviction that termination of Olivia's parental rights is in the best interest of C.L.R. III. Accordingly, we overrule Olivia's third issue.

## III. CHARLES'S APPEAL

Charles alleges that the evidence is insufficient to support the predicate findings under subsections 161.001(b)(1)(D), (b)(1)(E), (b)(1)(N), and (b)(1)(O). Charles does not challenge the trial court's best-interest finding.

The trial court's finding under subsection (b)(1)(D) regarding Charles is also adequately supported by the evidence in the record. As stated above, Charles was arrested on drug charges arising out of the "drug bust." *See In re S.M.*, 389 S.W.3d at 492; *see also In re V.V.*, 349 S.W.3d at 554; *In re S.D.*, 980 S.W.2d at 763. Further, he had nineteen criminal charges pending at the time of trial, including five arrests while this case was pending. *See In re V.V.*, 349 S.W.3d at 554; *In re S.D.*, 980 S.W.2d at 763 ("An environment which routinely subjects a child to the probability that she will be left alone because her parents are once again jailed . . . endangers both the physical and emotional well-being

of a child."); *see also In re C.A.B.*, 289 S.W.3d 874, 885-86 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (concluding that a parent engaging in criminal acts resulting in incarceration, even after knowing her parental rights were in jeopardy, endangered her child's emotion well-being). The record also showed that Charles smoked marihuana in the presence of the child and that he was arrested for endangering the child, among other things, when he evaded police in his vehicle while driving at reportedly high speeds with the child sitting in Olivia's lap unrestrained. *See In re J.T.G.*, 121 S.W.3d at 125. Additionally, the testimony established that Charles has engaged in domestic violence with Olivia, and that Charles made no attempt to comply with his court-ordered service plan, including multiple drug tests that the Department considered to be positive drug tests. *See In re J.I.T.P.*, 99 S.W.3d at 845; *see also In re R.F.*, 115 S.W.3d at 811.

Based on the foregoing evidence, we conclude the evidence was sufficiently clear and convincing to support the trial court's finding under subsection (b)(1)(D). Looking at the evidence in the light most favorable to the finding of the trial court, we conclude that a reasonable factfinder could have formed a firm conviction that Charles knowingly placed or allowed his child to remain in conditions or surroundings that endangered his physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D); *see also In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266. Moreover, the disputed evidence on the matter is not so significant that the factfinder could not have formed a firm

conviction of belief that its finding was true. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D); *see also In re J.O.A.*, 283 S.W.3d at 345; *In re J.F.C.*, 96 S.W.3d at 266-67.

And because only one ground is necessary for termination of parental rights, we need not address Charles's remaining complaints pertaining to subsections (b)(1)(E), (b)(1)(N), and (b)(1)(O). *See In re J.S.S.*, 594 S.W.3d at 503; *see also* TEX. R. APP. P. 47.1, 47.4. We therefore overrule all of Charles's issues on appeal.

## IV. CONCLUSION

Having found no reversible error, we affirm the judgment of the trial court.

JOHN E. NEILL
Justice

Before Chief Justice Gray,
     Justice Neill,
     and Justice Johnson
Affirmed
Opinion delivered and filed March 24, 2021
[CV06]

